# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**RANDY OUTLEY (#125022)**                                **CIVIL ACTION NO.**

**VERSUS**                                                                  **17-1782-SDD-EWD**

**JANE BATISTE, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on August 23, 2019.

                                                    **ERIN WILDER-DOOMES**
                                                    **UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

RANDY OUTLEY (#125022)            CIVIL ACTION NO.

VERSUS            17-1782-SDD-EWD

JANE BATISTE, ET AL.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is a Motion for Summary Judgment ("Motion")[1] filed on behalf of Defendants, Jane Batiste and Channle Veals ("Defendants"). For the following reasons, it is recommended the Motion be denied.

### I. Background

*Pro se* Plaintiff, Randy Outley ("Plaintiff"), an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 alleging "gross negligence" and "failure to protect" on the part of Defendants.[2] Plaintiff alleges that on April 21, 2017, he and another inmate, a "tier walker," got into an argument and the tier walker kicked Plaintiff through the bars of the cell dividing them.[3] Plaintiff was written up for property destruction and placed on mental health watch.[4] Later that day, Plaintiff alleges that his cell door was opened by Batiste while Plaintiff was in full restraints and while the tier walker was walking on Plaintiff's "tier."[5] Plaintiff states that when he exited his cell, still in full restraints, the tier walker began to beat Plaintiff. Veals allegedly backed up and allowed this to occur until a senior

---

[1] R. Doc. 21.
[2] R. Docs. 1 & 1-2, p. 1. Plaintiff sues Defendants only in their individual capacities. *See* R. Doc. 1-2. The Court previously dismissed Plaintiff's compensatory damages claim for failure to allege a physical injury. *See* R. Doc. 33. That Ruling and Order did not foreclose recovery of nominal or punitive damages. *Id.* at n.23.
[3] R. Doc. 1, p. 4.
[4] R. Doc. 1, p. 4. It is unclear why Plaintiff was placed on mental health watch.
[5] R. Docs. 1 & 1-2.

officer, Major Bellamy, stopped the conflict.[6] Plaintiff claims Batiste knew Plaintiff and the tier walker had just had a conflict because "she had just seen us kicking at each other."[7]

II.   **Law and Analysis**

   A.  **Summary Judgment Standard**

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[8] A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.[9] If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[10] Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[11] In resolving a motion for summary judgment, the court must review the facts and inferences in the light most favorable to the non-moving party, and may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[12]

   B.  **Exhaustion Requirement**

Defendants first contend that Plaintiff's claims are subject to dismissal for failure to exhaust administrative remedies. Pursuant to 42 U.S.C. § 1997e, Plaintiff was required to exhaust

---

[6] R. Doc. 1-2, p. 1.
[7] *Id. See also*, R. Doc. 12-1, p. 1.
[8] Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).
[9] *Celotex Corp.*, 477 U.S. at 323.
[10] *Anderson*, 477 U.S. at 248.
[11] *Celotex Corp.*, 477 U.S. at 323.
[12] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

administrative remedies available to him at the prison prior to commencing a civil action in this Court with respect to prison conditions.[13] This provision is mandatory and applies broadly to "all inmate suits about prison life."[14] A prisoner must exhaust administrative remedies by complying with applicable prison grievance procedures before filing a suit relative to prison conditions.[15] Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules.[16] One of the principal purposes of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'"[17] As a practical matter, a prisoner's grievance should "identify individuals who are connected with the problem" so as to "provide administrators with a fair opportunity" to address the problems that will form the basis of the suit.[18] The degree of specificity necessary in a prisoner's grievance should be evaluated in light of this intended purpose.[19]

Defendants do not contend that Plaintiff failed to properly follow the administrative remedy procedure. Rather, Defendants sole argument for dismissal based upon failure to exhaust is that because the facts vary between Plaintiff's administrative remedy procedure ("ARP") and his Complaint, he has failed to "properly" exhaust administrative remedies. This argument is unpersuasive. Plaintiff's ARP complained of an incident occurring on April 21, 2017 concerning both Defendants, Batiste and Veals.[20] According to the ARP, while Plaintiff was in full restraints and a tier walker was on the tier, his cell door was opened allegedly placing him in danger. Plaintiff

---

[13] 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."
[14] *Porter v. Nussle*, 534 U.S. 516, 532 (2002).
[15] *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004).
[16] *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).
[17] *Johnson*, 385 F.3d at 516, *quoting Porter v. Nussle*, 534 U.S. at 525.
[18] *Id.* at 522.
[19] *Johnson*, 385 F.3d at 516.
[20] R. Doc. 21-8, p. 8.

3

further alleged that Veal told Batiste to open the door, which Batiste did. Plaintiff alleged the tier walker hit Plaintiff "many times."[21] The ARP was summarized by intake personnel as follows: "States that Msgt. Batties [sic], and Sgt. Veals, let him out of his cell with a tier walker who hit him many times."[22]

Plaintiff's Complaint alleges an incident occurring on April 21, 2017 involving the same individuals identified in the ARP, Batiste and Veals, wherein Plaintiff and a tier walker were involved in an altercation. Though Plaintiff provides more details in his Complaint than he did in his ARP, he complains of the exact incident with the same Defendants. Defendants were provided with fair notice that Plaintiff intended to complain of having his cell door opened while a tier walker was on Plaintiff's tier. Further, though Plaintiff did not specifically state in his ARP that he intended to assert a failure to protect claim, Plaintiff stated in the ARP "[t]hey placed my life in danger," which is sufficient to notify prison officials that Plaintiff intended to assert a failure to protect claim. Accordingly, the argument that Plaintiff failed to properly exhaust administrative remedies due to inconsistencies between his ARP and his Complaint is without merit.[23]

### C. Failure to Protect

Plaintiff claims that his Eighth Amendment right to be free from cruel and unusual punishment was violated due to Defendant's failure to protect Plaintiff from a substantial risk of serious injury at the hands of another inmate. Defendants contend they are entitled to qualified immunity with respect to such claims. Employing a two-step analysis, the qualified immunity defense operates to protect public officials who are performing discretionary tasks.[24] The pertinent

---

[21] R. Doc. 21-8, p. 8.
[22] R. Doc. 21-8, p. 2.
[23] The cases relied on by Defendants (see R. Doc. 21-1, p. 6, n. 35) are factually distinguishable. In *Mead v. Cain*, 2010 WL 2595000 (M.D. La. May 21, 2010), the claims were dismissed because the plaintiff's administrative grievances did not at all address the issues raised in the complaint. In *Jelks v. Cain*, 2015 WL 5608245, at *3 (M.D. La. Aug. 18, 2015), this Court concluded that the claims against Warden Cain should be dismissed as there was no allegation of any wrongdoing in the administrative grievance as to Cain).
[24] *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012).

4

inquiry is whether a defendant's conduct violated the plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred. Under *Pearson v. Callahan*, courts have discretion to decide which of the two prongs of the analysis to address first.[25] This inquiry is undertaken in light of the specific context of the case, not as a broad, general proposition. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. While ordinarily one who pleads an affirmative defense has the burden to establish his entitlement to that defense, where a defendant pleads qualified immunity and shows he is a government official whose position involves the exercise of discretion, the plaintiff has the burden to rebut the defense by establishing that the defendant's allegedly wrongful conduct violated clearly established law.[26]

Under the Eighth Amendment to the United States Constitution, a prisoner has a constitutional right to be sheltered from the threat of harm or violence at the hands of other inmates.[27] Specifically, prison officials "have a duty ... to protect prisoners from violence at the hands of other inmates."[28] "Deliberate indifference" is the appropriate standard to be applied in this context, and this term has been defined as including an element of "subjective recklessness" as used in the criminal law.[29] An official acts with the requisite deliberate indifference if he is aware of an "excessive risk to inmate ... safety" and disregards that risk.[30] Mere negligence is insufficient to establish a failure to protect claim.[31] A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if

---

[25] 555 U.S. 223, 236 (2009) (concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) – that called for consideration of the two-ponged analysis in a particular order – should not be "regarded as an inflexible requirement").
[26] *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997) (quotations and citations omitted).
[27] *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986).
[28] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).
[29] *Id.* at 837.
[30] *Id.*
[31] *Farmer*, 511 U.S. at 837.

he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.[32] The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference.[33] In other words, the prison official must be subjectively aware of a substantial risk of serious harm to the inmate.[34] The plaintiff, however, may rely on circumstantial evidence indicating that because the risk was obvious, the official must have known of the risk to the inmate.[35] For the purposes of the qualified immunity analysis, this law was clearly established at the time the alleged incident occurred.

A paramount inquiry for a failure to protect claim is whether the defendant had knowledge of a specific threat posed by one inmate to another.[36] Often claims fail at this inquiry because competent evidence is not presented showing that the defendant should have been aware of a *specific* threat to that particular inmate. Here, however, the facts presented regarding this inquiry are in dispute. Defendants present evidence, via affidavits, supporting the following version of events:

1. On the date in question, neither Batiste nor Veals observed tier walker, Exalton Guidry, make verbal threats towards Plaintiff or kick at Plaintiff's cell bars;

2. Batiste and Veals were not aware of any problems between Guidry and Plaintiff;

3. Batiste opened Plaintiff's cell door upon request from Veals;

4. Upon opening the cell door, Plaintiff broke away from Veals and attacked Guidry;

5. Major Bellamy, who was present in the control booth with Batiste, responded and stopped the altercation; and

---

[32] *Farmer*, 511 U.S. at 847.
[33] *Id.* at 837.
[34] *Rodriguez v. Lozano*, 108 F.Appx. 823, 828 (5th Cir. 2004).
[35] *Id.*
[36] *See Mitchell v. Thomas*, 17-90, 2018 WL 4572667, at *6-7 (M.D. La. Sept. 24, 2018).

6. This was the first time either Batiste or Veals observed an altercation between Guidry and Plaintiff.

In contrast, Plaintiff presents the follow set of facts via affidavit:[37]

1. On the date in question, Plaintiff and Guidry made verbal threats to each other and kicked each other at the front of the tier through the bars;

2. Veals and Batiste observed the altercation;

3. Veals was approximately three "steps" away from where the altercation took place and heard the verbal threats;

4. Batiste may not have heard the verbal threats;

5. Veals issued a disciplinary report to Plaintiff for property destruction as a result of the kicking of the cell bars incident;

6. Veals placed Plaintiff in full restraints to bring him to mental health watch;

7. Thereafter, Veals motioned Batiste to open Plaintiff's cell door though Veals and Batiste knew the tier walker was on the tier; and

8. Plaintiff was attacked by Guidry.

As additional evidence, Plaintiff introduced a disciplinary report issued by Veals on April 21, 2017 that was issued for Plaintiff kicking cell bars.[38]

Based on the foregoing, there is a genuine dispute regarding the paramount inquiry of what knowledge Veals and Batiste possessed regarding the relationship between Guidry and Plaintiff prior to opening Plaintiff's cell door and escorting Plaintiff through the tier while Guidry was on Plaintiff's tier. The sworn statements of Veals and Batiste conflict with the sworn statement of Plaintiff. Based upon Plaintiff's version of events, the risk was obvious, and Veals and Guidry would have known of the risk to Plaintiff based on the events occurring earlier in the day. Since a genuine dispute exists as to material facts in this matter, summary judgment is inappropriate. Further, Defendants are not entitled to qualified immunity at this point. A genuine issue of material

---

[37] R. Doc. 24-3, p. 3.
[38] R. Doc. 24-3.

fact exists regarding Defendant's knowledge of the risk to Plaintiff. If Defendants were ultimately aware of the risk, Defendants' conduct may rise to the level of deliberate indifference such that they would not be entitled to qualified immunity.

Defendants appear to argue that quick intervention in a fight between inmates negates any cause of action an inmate has for failure to protect. Defendants fail to cite any law to support this proposition and the Court has not uncovered any law supporting this assertion. Moreover, claims for failure to protect versus failure to intervene, though related, are distinct, and one can exist without the other.[39] Because a defendant intervenes quickly does not negate a cause of action based upon that defendant's failure to protect the plaintiff in the first instance. Moreover, Plaintiff has not alleged a claim based upon failure to intervene. Thus, this argument is without merit.

**III.    Conclusion**

Plaintiff sufficiently exhausted his claims prior to filing suit with this Court. Further, genuine issues of material fact remain regarding Plaintiff's failure to protect claim. Accordingly, Defendants' Motion for Summary Judgment[40] should be denied.

To the extent that Plaintiff's allegations invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, Plaintiff's potential state law claims involving negligence, etc., involve wholly separate analyses than those presented by his federal

---

[39] Failure to intervene claims often seen in the context of one guard failing to intervene to stop a constitutional violation being committed by another guard. *See Williams v. Sanders*, Civil Action No. 12-475, 2014 WL37279 (M.D. La. Jan. 6, 2014); *Ball v. Guidry*, Civil Action No. 12-729, 2013 WL 6532061 (M.D. La. Dec. 12, 2013). *See also Johnson v. Boyd*, 701 Fed.App'x. 841 (11th Cir. 2017) (wherein the Eleventh Circuit held a plaintiff had sufficiently stated a cause of action for failure to intervene but had not sufficiently stated a cause of action for failure to protect).
[40] R. Doc. 21.

claims. Accordingly, it is recommended that the Court decline to exercise supplemental jurisdiction over any state law claims.

## **RECOMMENDATION**

**IT IS RECOMMENDED** that the Court decline supplemental jurisdiction relative to Plaintiff's potential state law claims.

**IT IS FURTHER RECOMMENDED** that that Defendants' Motion for Summary Judgment[41] be **DENIED**.

**IT IS FURTHER RECOMMENDED** that this matter be referred to the magistrate judge for further proceedings.

Signed in Baton Rouge, Louisiana, on August 23, 2019.

*Erin Wilder-Doomes*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[41] R. Doc. 21.